IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JACKIE REES,<br><br>                     Plaintiff,<br>v.<br><br>CAROLYN COLVIN, Acting Commissioner of the Social Security Administration,<br><br>                     Defendant. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL<br><br><br>Case No. 2:14-CV-489 TS<br><br>District Judge Ted Stewart |

This matter comes before the Court on Plaintiff Jackie Rees's appeal from the decision of the Social Security Administration denying her application for disability insurance benefits and supplemental social security income. Having considered the arguments of the parties, reviewed the record and relevant case law, and being otherwise fully informed, the Court will reverse and remand the administrative ruling.

I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether its findings are supported by substantial evidence and whether the correct legal standards were applied.[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[3] *Id.*

1

affirmed.[4]  The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[5]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ.[6]

## II.  BACKGROUND

A.   PROCEDURAL HISTORY

On May 5, 2011, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability beginning on July 1, 2004.[7]  The claim was denied initially and upon reconsideration.  Plaintiff then requested a hearing before an ALJ, which was held on February 19, 2013.[8]  The ALJ issued a decision on March 6, 2013, finding that Plaintiff was not disabled.[9]  The Appeals Council denied Plaintiff's request for review on May 12, 2014,[10] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[11]

B.   MEDICAL HISTORY

On November 5, 2004, Plaintiff was admitted to the University of Utah hospital after exhibiting suicidality, severe signs of depression, recent weight loss, lack of functioning, and paranoia.[12]  Plaintiff exhibited severe signs of psychomotor retardation and had a severely

---

[4] *Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[5] *Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[7] R. at 188–98.

[8] *Id.* at 26–61.

[9] *Id.* at 8–24.

[10] *Id.* at 1–4.

[11] 20 C.F.R. § 422.210(a).

[12] R. at 312.

depressed affect.[13] She appeared extremely lethargic and depressed and made virtually no eye contact.[14] Plaintiff was diagnosed with major depressive disorder.[15] She was discharged on November 12, 2004, and prescribed Lexapro and Risperdal.[16]

On April 14, 2005, Plaintiff presented to the emergency room after she had not been taking her medications for five months.[17] Upon examination, Plaintiff had a very flat affect and spoke very little.[18] Plaintiff was diagnosed with depression and arrangements were made for her to meet with Valley Mental Health the following day.[19]

On April 15, 2005, Plaintiff was seen by Connie Strong, APRN.[20] Plaintiff was "very psychomotor retarded and was unable to answer many questions."[21] Ms. Strong found that Plaintiff appeared severely depressed and had some paranoia.[22] She had no insight, poor judgment, and low motivation.[23] Plaintiff was diagnosed with major depression and was started on medication.[24]

---

[13] *Id.*
[14] *Id.* at 315.
[15] *Id.* at 318.
[16] *Id.* at 320.
[17] *Id.* at 420.
[18] *Id.*
[19] *Id.* at 421.
[20] *Id.* at 350.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 351.

Plaintiff was again seen by Ms. Strong on April 28, 2005.[25] Plaintiff reported that she was doing better.[26] She was appropriately dressed and groomed, and was wearing makeup.[27] While Plaintiff had improved with the use of medication, she still had little insight.[28] She was continued on medication, which she agreed to take.[29]

Plaintiff was again seen on June 14, 2005.[30] She stated that she felt panicky and depressed at times, and wanted to move out of her daughter's home.[31] Plaintiff reported that her depression had improved, but that it waxes and wanes.[32] She also reported an increase in panic attacks.[33] Plaintiff's diagnosis of depressive disorder with psychotic features remained the same and she was continued on medication.[34]

In August 2005, Plaintiff reported that she wanted to return to work, but felt she was unable.[35] Ms. Strong noted that Plaintiff's depression had improved and her anxiety was well controlled.[36] However, Plaintiff also stated that she continued to have feelings of hopelessness, tearfulness, and depression.[37] Ms. Strong opined that Plaintiff was unable to work at that time.[38]

---

[25] *Id.* at 349.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 346.

[31] *Id.*

[32] *Id.* at 347.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 346.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 539.

On September 23, 2005, Plaintiff reported that she continued to fight her depression.[39] Ms. Strong found that Plaintiff continued with some depression and sadness, but that she denied suicidality and that her mood had improved from the initial assessment.[40] Ms. Strong stated that Plaintiff continued to have moderate symptoms of depression, but Plaintiff did not want to change her medication.[41] Plaintiff's anxiety was well controlled.[42]

In November 2005, Plaintiff reported that she discontinued her Lexapro because it made her "more paranoid" but she continued to take Clonazepam.[43] In January 2006, Plaintiff's daughter contacted Ms. Strong, stating that Plaintiff was not doing well and was off her medication.[44]

Plaintiff was seen by Ms. Strong on January 9, 2006.[45] Plaintiff reported she was paranoid and was unsure of when she discontinued her medications.[46] Plaintiff stated that she started to feel better and went off the medications.[47] During the visit, Plaintiff did not smile or make eye contact, and her affect was angry.[48] "Although she denied suicidality, she appeared depressed."[49] Ms. Strong started Plaintiff on Abilify.[50] By June 2006, Plaintiff had dropped out of treatment.[51]

---

[39] *Id.* at 345.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.* at 344.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*

On July 10, 2006, Plaintiff was seen by C. Renee Rottler, Ph.D.[52] Plaintiff stated that her daughter had brought her in to encourage her to return to treatment.[53] Plaintiff had a sad, worried, and blunted affect.[54] While Plaintiff believed she was not in need of treatment or medication, she agreed she was not doing well.[55] Plaintiff was diagnosed with major depressive disorder.[56]

Plaintiff was seen by Kathleen Veresh, R.N., on July 27, 2006. It was reported that Plaintiff could not bathe, dress, or eat on her own.[57] She had eaten little in four days and was not drinking.[58] Ms. Veresh prepared a letter concerning "what her present condition is and her inability to work."[59]

Plaintiff again saw Ms. Strong on August 11, 2006. Plaintiff "was not very verbal" but stated that "she wishes she were dead."[60] Plaintiff was appropriately dressed and groomed, but appeared depressed and moved slowly.[61] She had suicidal thoughts previously, but had no intent or plan.[62] Plaintiff had improved on medication, but had "little insight into the fact that

---

[50] *Id.*

[51] *Id.* at 343.

[52] *Id.* at 341.

[53] *Id.* at 342.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* at 340.

[58] *Id.*

[59] *Id.* at 341.

[60] *Id.* at 339.

[61] *Id.*

[62] *Id.*

medication is what usually helps her to feel better."[63] Plaintiff agreed to continue taking Abilify.[64] Ms. Strong completed a Workplace Functional Ability Report indicating that Plaintiff was not able to work due to her depression.[65]

On September 14, 2006, Plaintiff reported that she was feeling much better and did not have "crazy thoughts" anymore.[66] Ms. Strong noted that Plaintiff's mood had improved, she was dressed and groomed appropriately, and her mood was euthymic.[67]

In November 2006, Plaintiff stated that she was doing really well and was afraid to go off her medication because it was helping.[68] Ms. Strong noted that Plaintiff had improved and continued her on Abilify.[69] In January 2007, Ms. Strong opined that Plaintiff could work 10 hours per week.[70] Ms. Strong believed that Plaintiff could try a very gradual return to part-time, low-stress work.[71]

At some point, Plaintiff again went off her medication. On September 18, 2007, Plaintiff's daughter stated that Plaintiff was not doing well and talked about wanting to die.[72] The following day, it was reported that Plaintiff was psychotic and getting violent.[73] On

---

[63] *Id.* at 340.

[64] *Id.*

[65] *Id.* at 536.

[66] *Id.* at 338.

[67] *Id.*

[68] *Id.* at 388.

[69] *Id.*

[70] *Id.* at 534.

[71] *Id.*

[72] *Id.* at 393.

[73] *Id.*

September 20, 2007, Plaintiff was unable to carry on a conversation.[74] On September 21, 2007, Plaintiff was catatonic and gave only short answers to questions.[75]

On October 9, 2007, Plaintiff was seen by Lisa Olsen, APRN.[76] Ms. Olsen noted that Plaintiff had an inconsistent treatment history and tended to stop taking her medications.[77] Plaintiff reported that she had stopped taking her medications two days prior.[78] Ms. Olsen found that Plaintiff was difficult to engage, had adequate grooming, and was appropriately dressed.[79] Plaintiff's mood was depressed and her affect was blunted, and she exhibited poor insight and judgment.[80] Plaintiff was restarted on Abilify and was reminded of the importance of taking her medications consistently.[81]

In April 2008, Plaintiff's daughter indicated that she was worried about her mother.[82] Plaintiff had stopped taking her medications or going to her appointments, and was becoming unmanageable.[83] In July 2008, Plaintiff presented to the emergency room with complaints of depression, delusions, and paranoia.[84]

---

[74] *Id.* at 394.
[75] *Id.* at 395.
[76] *Id.* at 397.
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Id.* at 400.
[83] *Id.*
[84] *Id.* at 442.

On April 1, 2010, Plaintiff again saw Ms. Strong.[85] Plaintiff described her mood as depressed and "[h]er affect was definitely depressed."[86] Plaintiff had limited insight into her illness and poor judgment in relation to treatment.[87] Plaintiff was diagnosed with major depressive disorder and restarted on Abilify.[88]

Plaintiff was examined by Liz McGill, Ph.D., on April 20, 2010.[89] Dr. McGill stated that Plaintiff was very difficult to interview and appeared depressed.[90] Plaintiff was also anxious during the examination.[91] Dr. McGill stated that Plaintiff's ability to get along with others would be "impaired" as she was very uncomfortable and related minimally.[92] Dr. McGill provided a diagnosis of major depression with psychosis.[93] She stated that Plaintiff needed to consistently stay involved with mental health treatment and medications, and that Plaintiff's prognosis was uncertain given her history of poor treatment compliance.[94]

Plaintiff met with Ms. Strong on April 27, 2010.[95] Plaintiff and her daughter both reported a cycle where Plaintiff would take medications for a while, then discontinue the medications once Plaintiff started to feel better.[96] Plaintiff's mood and affect were irritable, but

---

[85] *Id.* at 458.

[86] *Id.* at 459.

[87] *Id.*

[88] *Id.*

[89] *Id.* at 515.

[90] *Id.* at 516.

[91] *Id.*

[92] *Id.* at 517.

[93] *Id.* at 518.

[94] *Id.*

[95] *Id.* at 464.

[96] *Id.* at 465.

she stated she was doing better.[97] Ms. Strong stated that Plaintiff appeared to be doing better and continued her on Abilify and prescribed Lexapro and Clonazepam.[98]

On August 16, 2010, Plaintiff met with Ms. Strong.[99] Plaintiff stated that she was doing really well and that she realized she needed to stay on her medications.[100] Plaintiff presented "with appropriate grooming. Her thoughts were clear and goal directed. Her affect was broad and appropriate. She was smiling and interactive and expressed insight into her illness."[101] Plaintiff was continued on her medications.[102] Plaintiff was again seen on November 8, 2010, and was continuing to do well while on her medications.[103]

On February 7, 2011, Plaintiff told Ms. Strong that she was under a lot of stress because she was trying to help both her children.[104] Ms. Strong found that Plaintiff was stable on her medications and expressed insight into the need for medications.[105] Plaintiff was continued on her medications.[106]

In April 2011, Plaintiff stated that she was "doing really well."[107] Plaintiff's mood was good and her affect was broad and appropriate.[108] Again, Ms. Strong found that Plaintiff was stable on her medication.[109]

---

[97] *Id.*
[98] *Id.*
[99] *Id.* at 470.
[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Id.* at 472.
[104] *Id.* at 473.
[105] *Id.*
[106] *Id.*
[107] *Id.* at 474.

Plaintiff was examined by Emily Harris, Ph.D., on August 10, 2011.[110] Plaintiff stated she was mildly depressed, but was handling it.[111] Plaintiff was a reluctant reporter and seemed uneasy and uncomfortable.[112] She presented with a depressed mood.[113] Plaintiff described her symptoms as mild, but Dr. Harris noted that she had a history of severe depression with psychotic symptoms.[114] In addition, Dr. Harris noted that though Plaintiff was on medication, she was not symptom free.[115] Dr. Harris diagnosed schizoaffective disorder.[116] Dr. Harris found that Plaintiff was somewhat stable on her medications, but she still dealt with mild depression.[117] Dr. Harris noted that Plaintiff had a history of being inconsistent with treatment and that she needed to stay in long-term mental health treatment.[118] Dr. Harris opined that Plaintiff "may be able to go back to simple work if she is more consistent with medication."[119]

In September 2011, a Medicaid Review Board medical consultant stated that Plaintiff's condition met or equaled listed impairments 12.03 and 12.04 and a Medicaid examiner found her eligible for Medicaid based on disability.[120] In November 2011, Lois Huebner, Ph.D., a state-agency psychologist, stated that Plaintiff could do simple work in a low-stress environment as

---

[108] *Id.*
[109] *Id.* at 476.
[110] *Id.* at 525.
[111] *Id.*
[112] *Id.* at 527.
[113] *Id.*
[114] *Id.*
[115] *Id.*
[116] *Id.* at 529.
[117] *Id.*
[118] *Id.*
[119] *Id.*
[120] *Id.* at 531.

11

long as she stayed on her medications.[121] In March 2012, John Gill, Ph.D., a state agency psychologist, reviewed the evidence and agreed with Dr. Huebner's opinions.[122]

C.    HEARING TESTIMONY

At the hearing, the ALJ received testimony from Plaintiff and a vocational expert. Plaintiff stated that her mental health issues would prevent her from working.[123] Plaintiff stated that she takes care of her five-year-old grandson.[124] Plaintiff testified that she generally did not leave the house and that she was dependent on her daughter or her daughter's boyfriend to take her places.[125] Plaintiff stated that she had problems with concentration and thinking and became stressed dealing with the public.[126]

In response to a hypothetical given by the ALJ, the vocational expert testified that the hypothetical person could not perform Plaintiff's past relevant work, but she could perform other jobs in the national economy.[127]

D.    THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 1, 2004, the alleged onset date.[128] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: major depression, bipolar disorder, other

---

[121] *Id.* at 64–93.

[122] *Id.* at 96–121.

[123] *Id.* at 32.

[124] *Id.* at 36.

[125] *Id.* at 37–38.

[126] *Id.* at 33, 39.

[127] *Id.* at 54–55.

[128] *Id.* at 13.

affective/mood disorders, anxiety disorder, and obesity.[129] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[130] At step four, the ALJ determined that Plaintiff could not perform her past relevant work.[131] At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, she was not disabled.[132]

### III.  DISCUSSION

Plaintiff raises the following issues in her brief: (1) the ALJ failed to properly evaluate the opinion of Plaintiff's treating and examining medical providers; (2) the ALJ improperly evaluated Plaintiff's credibility; and (3) the ALJ did not meet his burden of proof at step five of the sequential evaluation.

A.  TREATING AND EXAMINING MEDICAL PROVIDERS

Plaintiff first argues that the ALJ erred in his evaluation of Plaintiff's treating and examining medical providers.

The ALJ, in reviewing the opinions of treating sources, must engage in a sequential analysis.[133] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[134] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in

---

[129] *Id.*

[130] *Id.* at 14–15.

[131] *Id.* at 22.

[132] *Id.* at 22–23.

[133] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[134] *Id.*

the record.[135] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[136]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[137] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[138]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[139] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[140] These same factors are considered in evaluating opinions from other sources.[141]

Plaintiff argues that the ALJ erred in his evaluation of Connie Strong. Plaintiff further argues that the ALJ's failure to assign weight to the opinions of Dr. Harris, Dr. McGill, and the Workforce Services medical doctor require remand.

---

[135] *Id.*

[136] *Id.*

[137] *Id.*

[138] *Id.* at 1301 (quoting *Drapeau v. Massanri*, 255 F.3d 1211, 1213 (10th Cir. 2001)); *see also* 20 C.F.R. 404.1527(c).

[139] *Watkins*, 350 F.3d at 1300.

[140] *Id.*

[141] Social Security Ruling ("SSR") 06–03p, 2006 WL 2263437 (Aug. 9, 2006).

Plaintiff was examined by Dr. McGill on April 20, 2010. Dr. McGill diagnosed Plaintiff with major depression with psychosis and assigned a GAF score of 45. Dr. McGill stated that Plaintiff needed to consistently stay involved with mental health treatment and medications, and that Plaintiff's prognosis was uncertain given her history of poor treatment compliance.

Plaintiff was examined by Dr. Harris on August 10, 2011. Dr. Harris noted that Plaintiff had a history of severe depression with psychotic symptoms. In addition, Dr. Harris noted that though Plaintiff was on medication, she was not symptom free. Dr. Harris diagnosed schizoaffective disorder. Dr. Harris found that Plaintiff was somewhat stable on her medications, but she still dealt with mild depression. Dr. Harris noted that Plaintiff had a history of being inconsistent with treatment and that she needed to stay in long-term mental health treatment. Dr. Harris opined that Plaintiff "may be able to go back to simple work if she is more consistent with medication."[142]

In September 2011, a Medicaid Review Board medical consultant stated that Plaintiff's condition met or equaled listed impairments 12.03 and 12.04 and a Medicaid examiner found her eligible for Medicaid based on disability.

As set forth above, the regulations require the ALJ to consider all medical opinions.[143] In this case, the ALJ did not specifically evaluate the opinions of Dr. McGill, Dr. Harris, and the Medicaid Review Board medical consultant. While the Commissioner has provided a number of reasons why the ALJ could reject these opinions,[144] "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision

---

[142] R. at 529.

[143] 20 C.F.R. § 1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

[144] Docket No. 17, at 14–18.

itself."[145] Because the ALJ failed to properly analyze these opinions, the Court must remand this matter for further proceedings. Because evaluation of these opinions on remand may affect the ALJ's consideration of Ms. Strong's opinion, the Court declines to consider the arguments made by the parties. Rather, the ALJ should reconsider Ms. Strong's opinions in light of the proper evaluation of the other opinion evidence.

B.  CREDIBILITY DETERMINATION

Plaintiff next contends that the ALJ erred in his credibility determination. Social Security Ruling 96-7p sets out relevant factors an ALJ should consider in determining credibility. These include:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[146]

In determining credibility, the ALJ must consider the entire case record.[147] However, the Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility . . . ."[148] An ALJ's "credibility determinations are peculiarly the province of the

---

[145] *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007).

[146] SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

[147] *Id.*

[148] *Qualls*, 206 F.3d at 1372.

16

finder of fact, and [the reviewing court] will not upset such determinations when supported by substantial evidence."[149]

The ALJ found that Plaintiff's subjective complaints were not fully credible, when Plaintiff takes her medications as prescribed.[150] The ALJ found that Plaintiff could "perform at higher levels than she states, or perceives she can, when she is compliant with her mental health medications."[151] The ALJ noted that Plaintiff reported an extremely limited lifestyle, but when she was taking her medications she was capable of handling her own activities of daily living.[152] This included taking care of her grandchild, housecleaning, preparing meals, watching television and movies, shopping, and visiting with family and friends.[153] The ALJ found that these activities were inconsistent with Plaintiff's allegation of total disability.[154]

The ALJ further found that while Plaintiff had a history of mental health issues, conservative treatment measures had been successful in controlling her symptoms when following them as prescribed.[155] In addition, the ALJ noted large gaps between treatments.[156] The ALJ found that this failure to seek treatment suggested that Plaintiff was not as disabled as she alleged.[157]

As set forth above, this matter must be remanded for proper consideration of the medical opinion evidence. Consideration of this evidence may affect the ALJ's analysis of Plaintiff's

---

[149] *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995).

[150] R. at 18–19.

[151] *Id.* at 19.

[152] *Id.*

[153] *Id.*

[154] *Id.*

[155] *Id.*

[156] *Id.*

[157] *Id.*

credibility.  Therefore, the Court will remand this issue as well.  The Court pauses to make one point.

The Court agrees with Plaintiff's argument that her non-compliance with medication is not a valid reason to reject Plaintiff's testimony.[158]  On remand, the ALJ is directed to consider whether Plaintiff's impairments prevent her from consistently taking her medications.  As the ALJ noted, and as is evidenced by the record, Plaintiff exhibits a cycle where she takes medications until her condition improves only to discontinue her medications, leading to a deterioration in her mental health.  The record shows that Plaintiff generally has poor insight into her illness and fails to appreciate the fact that regularly taking her medications helps improve her condition.  It does not appear that the ALJ fully considered these facts when making his credibility determination.  Therefore, remand is necessary on this point.

C.     STEP FIVE

Plaintiff next argues that the ALJ erred at step five of the sequential evaluation process.  Plaintiff argues that the hypothetical given to the vocational expert failed to account for all of Plaintiff's limitations, including Plaintiff's poor concentration, persistence, and pace; her anxiety; her need to constantly be with an immediate family member; and her lapses into psychotic features.  Because this matter must be remanded for further proceedings, it is unnecessary to reach Plaintiff's arguments concerning the ALJ's step five analysis.[159]  The ALJ should conduct a new step five analysis after considering all of the evidence, as set forth above.

---

[158] *See Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Indeed, we have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'").

[159] *See Clifton*, 79 F.3d at 1010.

IV. CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein. The Clerk of Court shall enter judgment remanding this case and shall close this case forthwith.

Dated this 21st day of April, 2015.

        BY THE COURT:

        _____
        Ted Stewart
        United States District Judge